FOR PUBLICATION

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS

|   |   |   |
|---|---|---|
| L'HENRI, INC. d/b/a O'HENRY CLEANERS and CYRIL V. FRANCOIS ASSOCIATES, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 2006-177 |
| v. | ) ) | |
| VULCAN MATERIALS COMPANY; THE DOW CHEMICAL COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

**ATTORNEYS:**

**Nancy D'Anna, Esq.**
St. John, U.S.V.I.
    *For the plaintiffs.*

**Douglas C. Beach, Esq.**
St. Thomas, U.S.V.I.
    *For defendant Vulcan Materials Company.*

**Richard H. Hunter, Esq.**
St. Croix, U.S.V.I.
    *For defendant The Dow Chemical Company.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of the defendants, Vulcan Materials Company ("Vulcan") and The Dow Chemical Company ("Dow") (collectively referred to as the "Defendants"), to dismiss the First Amended Complaint of the plaintiffs, L'Henri, Inc. d/b/a O'Henry Cleaners ("O'Henry") and Cyril V. Francois Associates,

LLC ("Francois") (collectively referred to as the "Plaintiffs").

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs initiated this three-count action in October, 2006, against the Defendants[1] for damages arising out of groundwater contamination allegedly caused by the Defendants' products.

According to the Plaintiffs' First Amended Complaint, O'Henry is a business engaged in the operation of two dry-cleaning stores in the area known as Tutu Valley on St. Thomas, U.S. Virgin Islands. One of O'Henry's stores is located on property owned by Francois's predecessor-in-interest, Francois Associates.

In the late 1980s, testing revealed that groundwater in Tutu Valley was contaminated. The EPA thereafter commenced an administrative action to determine the source of the contamination and to implement corrective measures. Investigations later showed that several wells in the vicinity had elevated levels of gasoline, chlorinated organic compounds, and chlorinated volatile organic compounds ("CVOCs"). Further investigations revealed that property in the vicinity formerly used by a business known as Laga Industries, Ltd. ("Laga") as a

---

[1] The First Amended Complaint named additional defendants. Those defendants were dismissed with prejudice pursuant to the parties' stipulation. (*See* Stipulation of Dismissal of Certain Defs., June 19, 2007.)

textile manufacturing plant (the "Laga Facility"), was the main source of the CVOCs. Those investigations also revealed the presence of CVOC contaminants, mainly perchloroethylene ("PCE"), in the groundwater on one of O'Henry's properties.

According to the Plaintiffs, the Defendants are manufacturers and suppliers of PCE used at the Laga facility and at O'Henry's dry-cleaning store. The Plaintiffs allege that the Defendants knew or should have known that PCE can have noxious effects on human beings. The Plaintiffs further allege that the Defendants marketed and sold PCE for use as a solvent in industrial and commercial dry-cleaning, and failed to provide warnings and instructions to purchasers and users of PCE to prevent contamination.

The Plaintiffs seek damages for costs they have incurred in defending themselves in other litigation arising out of the groundwater contamination and in investigating the source of that contamination. Count One alleges negligence, Count Two alleges strict products liability, and Count Three alleges private nuisance.

The Defendants assert that all of the Plaintiffs' claims are time-barred. They further assert that with respect to Count Three, the Plaintiffs have failed to state a private nuisance claim for which relief may be granted. They now move to dismiss

the Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. **DISCUSSION**

When considering a motion to dismiss pursuant to Rule 12(b)(6), all material allegations in the complaint are taken as admitted, and the Court must construe all facts in a light most favorable to the non-moving party. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). All reasonable inferences are drawn in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp.*, 127 S. Ct. at 1969 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Under Rule 8(c) of the Federal Rules of Civil Procedure, the statute of limitations constitutes an affirmative defense to an action. *See* FED. R. CIV. P. 8(c). However, that defense may be raised on a motion under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. United States Veterans' Administration*

*Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975)). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.*

A statute of limitations defense "usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, 'defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'" *Davis v. Grusemeyer*, 996 F.2d 617, 623 (3d Cir. 1993) (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985)).

### III. **ANALYSIS**

The Defendants first argue that the Plaintiffs' various claims are barred by a two-year statute of limitations. In support of that argument, the Defendants argue that the statute of limitations began to run as of 1987, when O'Henry learned of PCE contamination in Tutu Valley from the EPA. The Defendants further assert that O'Henry was again put on notice of the contamination in the mid-1990s, when the EPA found elevated PCE levels on O'Henry's property.

The time within which legal actions must be commenced in the Virgin Islands is set forth at Title 5, Section 31 of the Virgin

*L'Henri, et al. v. Vulcan, et al.*
Civil No. 2006-177
Memorandum Opinion
Page 6

Islands Code, which provides, in pertinent part[2]:

> Civil actions shall only be commenced within the periods prescribed below after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute:
>
> (5) Two years- (A) An action for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not herein especially enumerated . . . .

V.I. CODE ANN. tit. 5, § 31(5)(A). The two-year time limit set forth at subsection (5)(A) is applicable to the Plaintiffs' negligence, strict products liability, and private nuisance claims. *See Chapman v. Café Madeleine*, Civ. No. 91-1995, 1998 V.I. LEXIS 26, at *5 (V.I. Terr. Ct. Oct. 30, 1998) (noting that "claims of negligence . . . must be filed within two years of the date of the injury"); *White v. S & E Bakery*, Civ. No. 806-1990, 1991 V.I. LEXIS 1, at *4 (V.I. Terr. Ct. Mar. 28, 1991) (noting that products liability actions are "governed by the two-year statute of limitation"); *Hodge v. Bluebeard's Castle*, Civ. No. 925-1997, 2002 V.I. LEXIS 11, at *19 (V.I. Terr. Ct. Apr. 17, 2002) (noting that a two-year limitations period applies to private nuisance claims).

To determine whether the Plaintiffs' claims against the

---

[2] Because the Plaintiffs have brought only territorial, not federal, claims, Virgin Islands law applies. *See Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 512 (3d Cir. 2006) (applying New Jersey's statute of limitations to the plaintiffs' state law claims).

Defendants are time-barred by the two-year statute of limitations, the Court must determine when those claims began to accrue. In the Virgin Islands, the "discovery rule" may toll the applicable statute of limitations where the injury is latent or is not readily ascertainable. *See Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d Cir. 1989); *Deleski v. Raymark Industries, Inc.*, 819 F.2d 377, 379 (3d Cir. 1987); *Cowgill v. Raymark Industries, Inc.*, 780 F.2d 324, 332 (3d Cir. 1986); *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir. 1985). Under that rule, the applicable statute of limitations will not begin to run until "the plaintiff knew or should have known through the exercise of reasonable diligence sufficient critical facts to put him on notice that (1) he has been injured and (2) the actions or inactions of a particular party could have been a cause of that injury." *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 986 (D.V.I. 1995).

The discovery rule focuses not on "the plaintiff's actual knowledge, but rather on 'whether the knowledge was known, or through the exercise of diligence, knowable to'" the plaintiff. *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) (quoting *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir. 1981)). To demonstrate reasonable diligence, a plaintiff must "establish[] that he pursued the cause of his injury with those

qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006) (citation omitted; applying Pennsylvania law). "[W]here the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." *Burton v. First Bank of Puerto Rico*, Civ. No. 554-2005, 2007 V.I. LEXIS 19, at *6 (V.I. Sup. Ct. July 19, 2007) (quoting *Vitalo v. Cabot Corp.*, 399 F.3d 536, 543 (3d Cir. 2005)).

Here, the Plaintiffs acknowledge that they knew of their injury as of the early to mid-1990s. The First Amended Complaint specifically alleges, in pertinent part:

> From 1992 to 1995, the US EPA led an extensive Remedial Investigation/Feasability Study . . . to determine the nature and extent of contamination. . . . [T]he US EPA found the presence of CVOC contaminants, mainly [PCE], in soils and ground water at the [Plaintiffs'] property. The US EPA concluded that PCE releases from [the Plaintiffs' store] impacted downgradient groundwater quality above the Federal drinking water standards.

(Compl. ¶¶ 63-64.)

The date of the Plaintiffs' alleged injury thus appears on the face of the complaint. That injury incurred no later than 1995. Accordingly, the first part of the discovery rule is satisfied. *See*, *e.g. Rolax v. Whitman*, 53 Fed. Appx. 635, 637 (3d

Cir. 2002) ("[The plaintiff] alleges in his first five counts that he was subject to an illegal search and seizure [in May 1996]. Assuming this is true, he had knowledge of the events necessary to establish a claim at the time of the second frisk in May 1996."); *Davis*, 996 F.2d at 625 ("[G]iven that, on the face of the complaint, [the plaintiff] was on notice of the operative facts forming the basis of his RICO claims by December 1986, his claim of fraudulent concealment, based largely on conduct well after that date, provides no basis on which to save his untimely RICO claims."); *cf. Novinger Group, Inc. v. Hartford Ins., Inc.*, 514 F. Supp. 2d 662, 669 (M.D. Pa. 2007) (reasoning that because "the exact time when plaintiffs discovered or should have discovered their alleged injuries remains unclear[,] . . . plaintiffs' allegations are sufficient to survive a motion to dismiss").

The second part of the discovery rule asks whether the Plaintiffs knew or should have known whether a particular party caused their injury. The Defendants assert that the allegations in the First Amended Complaint evidence the Plaintiffs' knowledge that the Defendants caused their alleged injury, and thus that the statute of limitations began to accrue at least as early as

1995.[3]  The Defendants argue in the alternative that the Plaintiffs had sufficient facts to put them on notice that the Defendants' alleged conduct could have been the cause of the Plaintiffs' injury, and that the Plaintiffs failed to exercise reasonable diligence in discovering the liable party.

The relevant allegation in the First Amended Complaint concerning the Defendants' sales of PCE to the Plaintiffs is the following:

> The . . . Defendants were the manufacturers and suppliers of large quantities of PCE used at the Laga Facility and [the Plaintiffs'] store during the time of their respective operations during the 1970s through the 1990s.

(Compl. ¶ 90.)  The Plaintiffs further allege that at the time they discovered the PCE contamination on their property and during subsequent litigation, they believed that the contamination was caused by a downstream migration of PCE from the Laga Facility, not from their purchase of PCE from the Defendants (Compl. ¶ 80; Pls.'s Resp. to Mot. of Defs. Dowe Chemical Co., Vulcan Materials Co. and Hoyt Corp. to Dismiss Pls.'s Compl. 13, 18.)

---

[3]  The Defendants also seek support for their argument with the claim that the Plaintiffs were involved in other litigation in the 1990s stemming from PCE contamination.  That argument is of little help to the Defendants, since, on a Rule 12(b)(6) motion, the Court considers only the allegations in the complaint. *See Mele v. FRB*, 359 F.3d 251, 257 (3d Cir. 2004) ("It is black-letter law that [a] motion to dismiss for failure to state a claim . . . . is to be evaluated only on the pleadings.") (citation omitted).

At this stage of the litigation, the Court cannot say that the Plaintiffs have not alleged facts that "'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp.*, 559 U.S. 554, 589 (1965)). The question whether the Plaintiffs exercised reasonable diligence in determining who caused their injury is a question of fact that is not apparent on the face of the complaint. *Cf. Hauptmann v. Wilentz*, 570 F. Supp. 351, 363 n.4 (D.N.J. 1983) (allowing a 12(b)(6) motion based on the statute of limitations in a civil rights case where "the fact that [the defendant] prosecuted [the plaintiff] clearly appears on the face of the complaint"), *aff'd* 770 F.2d 1070 (3d Cir. 1985). As such, that question is better suited for the summary judgment stage of these proceedings. *See*, *e.g.*, *Novinger Group, Inc. v. Hartford Ins., Inc.*, 514 F. Supp. 2d 662, 669 n.11 (D.N.J. 2007) (holding that the applicability of the discovery rule is better left for summary judgment); *Wise v. Mortgage Lenders Network USA, Inc.*, 420 F. Supp. 2d 389, 393 (E.D. Pa. 2006) ("If a time-bar is not clear based on the face of the complaint, then the motion to dismiss should be denied and the issue should be decided at a later stage of the litigation."). Accordingly, the motion to

dismiss will be denied insofar as it rests on statute of limitation grounds.

The Defendants also assert that the Plaintiffs' private nuisance cause of action in Count Three of the First Amended Complaint must be dismissed for failure to state a claim.[4]

"A private nuisance is a nontresspassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D (1979).[5] "The understood common law basis for a nuisance is an act arising out of the use of land which likewise affects another's use of land." *Mahogany Run Condo. Ass'n v. ICG Realty Management Corp.*, Civ. Nos. 97-185, 96-185, 1999 U.S. Dist. LEXIS 2005, at *6-7 (D.V.I. Feb. 16, 1999) (citations omitted). To state a claim for private nuisance, a plaintiff must allege either an act or "a failure to act under circumstances in which the actor is under a duty to

---

[4] Specifically, the Defendants contend that

> [p]roduct suppliers are not liable for a nuisance because (1) nuisance is a tort that flows from the use of property; (2) nuisance liability requires control of the nuisance, which suppliers lack; and (3) product liability rather than nuisance is the proper body of law to regulate manufacturer/supplier liability for harm caused by a product.

(Defs.' Mem. of Law in Supp. of Mot. to Dismiss 10-11.)

[5] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases in which they apply, in the absence of local laws to the contrary." V.I. Code Ann. tit. 1, § 4.

take positive action to prevent or abate . . . the invasion of the private interest." RESTATEMENT (SECOND) OF TORTS § 824 (1979). Furthermore, "[o]ne is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." *Id.* at § 834.

No Virgin Islands case appears to have addressed whether a manufacturer may be held liable on a private nuisance claim beyond the point of sale. Moreover, there appears to be a split of authority among those jurisdictions that have addressed this question. A reading of such cases, however, shows that the answer to that question turns, at least in part, on the degree of control that the manufacturer retains over its product post-sale. The more control the manufacturer exercises, the greater the likelihood that private nuisance liability will attach. *See*, *e.g.*, *Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 656 (D.R.I. 1986) ("[L]iability for damage caused by a nuisance turns on whether the defendants were in control over the instrumentality alleged to constitute the nuisance, either through ownership or otherwise.") (applying New Hampshire law); *Hooksett School District v. W.R. Grace & Co.*, 617 F. Supp. 126, 133 (D.N.H. 1984) (dismissing a private nuisance claim where "the Defendant's ability to abate or relieve the complaint of nuisance

. . . [is] absent in the case at bar.") (applying New Hampshire law).  Thus, where there is no evidence of such control, dismissal of a private nuisance claim is appropriate. *See*, *e.g.*, *Bloomington v. Westinghouse Electric Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) ("Since the pleadings do not set forth facts from which it could be concluded that [the manufacturer] retained the right to control the [chemicals] beyond the point of sale to [the defendant], we agree with the district court that [the manufacturer] cannot be held liable on a nuisance theory.").

Here, Count Three of the First Amended Complaint asserts no other facts than those asserted in Counts One and Two.  In essence, those facts allege that the Defendants failed to warn the Plaintiffs about the dangers associated with PCE, and nevertheless marketed and sold PCE to the Plaintiffs and other entities for use in dry-cleaning operations.

Significantly, there are no allegations that the Defendants invaded the Plaintiffs' interest in the enjoyment of land, *see* RESTATEMENT (SECOND) OF TORTS § 821D, or that the Defendants created a nuisance by using their own property in an unreasonable manner, *see Mahogany Run*, 1999 U.S. Dist. LEXIS 2005, at *6-7.  Furthermore, the instrumentality that created the alleged nuisance - PCE - has been in the possession and control of the Plaintiffs, not the Defendants, since they purchased the product.

The Defendants, after the time of manufacture and sale, no longer had the power to abate the nuisance. In other words, there is no support for the proposition that the Defendants participated to a substantial extent in carrying on the alleged nuisance. Thus, because the essential elements of a private nuisance claim are missing, Count Three will be dismissed.[6]

## IV. CONCLUSION

For the reasons stated above, the motion to dismiss will be denied as to Counts One and Two. Because the Plaintiffs have failed to state a claim in Count Three, the motion will be

---

[6] The cases upon which the Plaintiffs rely are unhelpful. The Plaintiffs first rely on *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 455 (S.D.N.Y. 2006) for the proposition that "the promotion of a defective product with knowledge of the hazard that such use would create was distinct and more egregious than the mere failure to warn." (Pls.'s Resp. to Mot. of Defs. Dowe Chemical Co., Vulcan Materials Co. and Hoyt Corp. to Dismiss Pls.'s Compl. 20.) That reliance is misplaced because the *Methyl* Court specified that a manufacturer's private nuisance liability arises only where its conduct "amount[s] to more than simply the manufacture or distribution of the defective product. . . . Importantly, a failure to warn regarding the dangers of a product, without more 'activity directly connected' to the creation of the nuisance, is an insufficient basis for nuisance liability." *In re Methyl Tertiary Butyl Ether Products Liability Litig.*, 457 F. Supp. 2d at 463-64. Significantly, there is no evidence in this matter that the Defendants' conduct amounted to more than the marketing and sale of PCE. The Plaintiffs also rely on *In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828 (N.D. Ill. 2002) for a similar proposition. *Starlink* is distinguishable, however, because the court in that case reasoned that private nuisance liability could attach to the defendant manufacturer because the "plaintiffs had no ability to access or control the nuisance themselves," since it came from a neighboring property. *Id.* at 847. Here, the Plaintiffs allege that the harm to their property came from PCE they purchased directly from the Defendants. Moreover, the *Starlink* Court emphasized that the defendant manufacturer in that case had "some measure of control over [the plaintiff's] use, as well as a means to abate any nuisance caused by its misuse." *Id.* That fact, the court reasoned, "negates many of the concerns courts have expressed about holding manufacturers liable for post-sale nuisances." *Id.* In the matter before this Court, the Plaintiffs do not assert, nor is there any allegation in the complaint, that the Defendants had any such control or means to abate the alleged nuisance.

granted as to that count.  An appropriate order follows.


                                       S\_____
                                          **Curtis V. Gómez**
                                            **Chief Judge**